**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

_____

JACKSON BURNETT,

                          Petitioner**,**

_____

                                                            **Hon. Hugh B. Scott**
                                                            02-CV-00265
                          v.                                **(Consent)**

                                                            **Decision**
                                                            **&**
                                                            **Order**

JOHN BURGE,_____
                          Respondent.

_____

_____

         Before the court is Petitioner Jackson Burnett's petition for habeas corpus relief pursuant

to 28 U.S.C. § 2254. Burnett challenges his state court conviction on the following grounds: (1)

ineffective assistance of trial counsel; (2) ineffective assistance of appellate counsel; and (3) a

violation of his due process rights.


                              **BACKGROUND**


         On August 31, 1997 Homer Brown, was shot in his right hip on Parcells Avenue in the

City of Rochester. Brown managed to run to his home at 254 Parcells Avenue after being shot

1

and collapsed in the driveway. (R. Jan. 20, 1998, at 251).[1] At least two people witnessed the

shooting: Joseph Kennedy, who had dated Brown's sister, and Naeisha Matthews, who was

eleven years old at the time.

On the day that Brown was shot, he identified the person that shot him as "J", an

individual who lived in his neighborhood. (Id. at 416). Brown said that "J" had shot him with a

rifle that "J" had pulled out from underneath his trench coat. Several days later, while recovering

in the hospital, Brown identified the petitioner Jackson Burnett in a photo array as "J", the person

who shot him (Suppression Hearing Minutes, Tr. Nov. 9, 1997 at 8). Burnett, who lived at 194

Parcells Avenue, was arrested at his house on September 5, 1997, and taken to a police station

for questioning (Id. at 11-13). After waiving his Miranda [2] rights, Burnett initially denied

involvement in the shooting (Id. at 19). Burnett changed his story, however, after the investigator

told him that he had been identified as the shooter. Burnett said that he confronted Brown on the

street because Brown had stolen $850 from his house the night before (Id. at 20). According to

Burnett, when he confronted Brown, Brown removed a 9-millimeter gun from under his coat and

pulled the trigger. Burnett asserts that, "he did what he had to do", meaning that he shot Brown

(Id. at 21). Burnett refused to tell the police what he did with the gun and he refused to provide a

written statement.  Petitioner was charged with assault in the first degree among other felony

offenses.

At trial, Brown identified Burnett as the person who shot him, as did Joseph Kennedy,

who witnessed the shooting ( Tr., Jan. 20, 1998, at 237, 343-344). Brown denied having

---

[1] Reference denoted  "(R. __)" refer to the state court transcript.

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

possessed a gun and no weapon was found at the crime scene by the police. Naeisha Mathews, testified that she saw a black man wearing a rain coat shoot Homer Brown with a long gun, however she testified that she did not get a good look at the shooter (Id. at 376-377, 386). Neither Kennedy nor Mathews saw Brown with a gun. Ronald Reinstein, the police investigator who interviewed Burnett after his arrest, testified that the petitioner admitted that he shot Brown. Burnett took the stand at trial, but he did not raise justification as a defense. Instead, he testified that he did not shoot Brown and denied that he made any admission to Reinstein. According to Burnett, he repeatedly and consistently told Reinstein that he did not shoot Brown (Id. at 57).

Burnett was convicted of Assault in the First Degree (Penal Law 120.10[1]), a class B felony, and Criminal Possession of a Weapon in the Third Degree (Penal Law 265.02[1]), a class D felony. The court determined that Burnett was a second felony offender and sentenced him to a determinate term of incarceration of 16 years for the assault and an indeterminate term of 3 ½ to 7 years for the weapons offense.

## DISCUSSION

**Exhaustion**

In the interests of comity and in keeping with the requirements of 28 U.S.C. § 2254(b), federal courts will not consider a constitutional challenge that has not first been "fairly presented" to the state courts. [3] See Ayala v. Speckard, 89 F. 3d 91 (2d Cir. 1996), citing Picard v Connor, 404 U.S. 27, 275, 92 S.Ct 509, 512, 30 L.Ed 2d 438 (1971); Daye v Attorney General of

---

[3] Section 2254(b) provides the Court with discretion to *deny* (but not to grant) an application for a writ of habeas corpus on the merits notwithstanding the failure of the applicant to exhaust state court remedies.

New York, 696 F. 2d 186, 191 (2d Cir. 1982) (en banc), cert denied, 464 U.S. 1048 (1984).

A state prisoner seeking federal habeas corpus review of his conviction must first exhaust his available state court remedies with respect to issues raised in the federal habeas petition. Rose v Lundy, 455 U.S. 509 (1982) To meet this requirement, the Petitioner must have raised the question in a state court challenge to his conviction and put the state appellate court on notice that a *federal constitutional claim* was at issue. See Grady v. Le Ferve, 846 F. 2d 862, 864 (2d Cir. 1988); Petrucelli v. Coombe, 735 F. 2d 684, 688-89 (2d Cir. 1984).

Respondent does not contest the petitioner's exhaustion of state court remedies. Based on the record before the Court, it appears that the petitioner has exhausted his state court remedies and therefore review of the claims asserted in the Petition is appropriate under § 2254(b)(2).


**Standard of Review**

State court findings of "historical facts," and inferences drawn from those facts, are entitled to a presumption of correctness. Matusiak v. Kelly, 786 F. 2d 536, 543 (2d Cir.), cert. denied, 479 U.S. 805 (1986). (See also 28 U.S.C. § 2254(e)(1) which states that, "a determination of a factual issue made by a State court shall be presumed to be correct".) Where the State court has reviewed an issue on the merits, in order for a Petitioner to prevail in a federal habeas corpus claim he must show that there was a violation of 28 U.S.C., § 2254(d). As amended by the Antiterrorism and Effective Death Penalty Act of 1996 [4] ("AEDPA"), § 2254(d) provides that a habeas corpus petition may not be granted with respect to any claim that was

---

[4] Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. No.104 -132, 110 Stat. 1214.

adjudicated on the merits in state court unless the state court's adjudication of that claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The habeas corpus Petitioner shall have the burden of rebutting the presumption of correctness by clear and convincing evidence. The presumption of correctness attaches to both by state and trial courts and by state appellate courts. Smith v. Sullivan, 1988 WL 156668 (W.D.N.Y 1998) (Larimer, C. J) Nevius v. Sumner, 852 F.2d 463, 469 (9th Cir. 1988), cert denied, 490 U.S. 1059 (1989).

As noted in Smith, "the new version of § 2254(d) has clearly raised the bar for habeas petitioners, placing on them the burden to show by clear and convincing evidence that the state court's decision was defective in some way" (Id. at 3). The statute "requires federal courts 'to give greater deference to the determinations made by state courts than they were required to do under the previous law.'" Ford v Ahitow, 104 F. 3d 926, 936 (7th Cir. 1997) (quoting Emerson v Gramley, 91 F.3d 898, 900 (7th Cir. 1996) cert. denied, 520 U.S. 1122, 117 S.Ct. 1260, 137 L.Ed.2d 339 (1997)); see also Houchin v Zavaras, 107 F. 3d 1465, 1470 (10th Cir. 1997) ("AEDPA increases the deference to be paid by the federal courts to the state court's factual findings and legal conclusion"). As stated by the Supreme court:

> Sec. 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of

> habeas corpus with respect to claims adjudicated on the merits in
> state court ... . Under the "contrary to" clause, a federal habeas court
> may grant the writ if the state court arrives at a conclusion opposite
> that reached by this Court on a question of law or if the state court
> decides a case differently than this Court has on a set of materially
> indistinguishable facts.

> Under the "unreasonable application" clause, a federal habeas court
> may grant a writ if the state identifies the correct governing legal
> principal from this Court's decisions's but unreasonably applies that
> principle to the facts of the prisoner's case. See Williams v. Taylor,
> 529 U.S. 362, 120 S.Ct. 1495, 1523 (2000)

In order for the petitioner to prevail on claims already adjudicated on the merits, he must

show that state courts have violated the federal standards set forth above.

**Ineffective Assistance of Counsel**

Petitioner seeks habeas corpus relief based upon the claims that he was provided

ineffective assistance of trial counsel and also ineffective assistance of appellate counsel. Both

claims were reviewed and denied on the merits in state court.

Ineffective Assistance of Trial Counsel

The claims upon which the instant petition are based were raised by Burnett on direct

appeal, in his CPL 440.10 motion and in his a state court Writ of Error *Coram Nobis*. In each

instance, the petitioner suggested that proof of his guilt was insufficient and that "but for"

counsel's overwhelming ineffectiveness, the outcome of the petitioner's case would have been

different.

The petitioner's claim of ineffective assistance must be analyzed according to the standards set forth by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984).  In Strickland, the Court stated that the test for an ineffective-assistance claim in a habeas corpus case is whether the petitioner received "reasonably competent assistance."  Strickland, 466 U.S. at 688.  In deciding this question, the court must apply an objective standard of reasonableness under prevailing professional norms.  Id.  Generally, defense counsel are "strongly presumed to have rendered adequate assistance ..."  Strickland, at 690.  To succeed on such a claim, then, the petitioner must "overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' "  Strickland, at 689 (quoting Michel v. Louisiana, 350 U.S. 91, 101 (1955)). In addition, he must also show that there is a reasonable probability that, but for the deficiency, the outcome of the proceeding would have been different. Id at 694.  The court determines that presence or absence of prejudice by considering the totality of the trial evidence. Strickland, at 695.

Specifically, Burnett asserts that trial counsel was ineffective for the following reasons:[5]

Pretrial Investigation and Preparation.

The petitioner claims that he had ineffective assistance of trial counsel because he asserts that he was misidentified as the shooter and that if his counsel had investigated his case more thoroughly, it is possible that he may have been able to prove that the petitioner was not the shooter.  In this regard, Burnett asserts that trial counsel failed to communicate with him during critical pretrial stages and that counsel should have talked with his wife, Cynthia Burnett and an

---

[5]   Several of the grounds asserted by the petitioner are duplicative and overlapping.  The Court has attemptedto  grouped the allegations to avoid repetition.

7

individual named George Starks.  Burnett does not identify any particular "critical pretrial stage,"

nor does he allege how counsel failed to communicate with him or any prejudice resulting from

such a failure at that stage.

It is undisputed that neither of these individuals witnessed the Brown shooting. Burnett

does not allege that either of these individuals would have provided an *alibi* defense for Burnett.

Instead, Burnett vaguely suggests that Starks would have advised trial counsel that Starks had

spoken with Brown and that Brown had stated to Starks that he did not know who shot him.

Further, Burnett asserts that Starks would have advised counsel that Brown admitted knowing

someone named "Philly," who Burnett suggests in a conclusory fashion may have been the

person who shot Brown. Also, Burnett asserts that Starks could have provided trial counsel with

information to the effect that Brown was involved in drug trafficking  (Docket No. 1, petitioner's

attachment at 3-5).[6]  The record reflects that trial counsel did employ an investigator, JM

Investigations, to assist in the investigation of the charges against Burnett.  (Docket No. 10,

Exhibits  at 237).  The state court held that trial counsel's investigator did inquire into the

possible recantation by Brown as to who shot him.  (Docket No. 10, Exhibits at 237-38, 543-44).

In fact, trial counsel adduced evidence at trial, including the testimony of Mitchell Bock and

---

[6]    Burnett also suggests that trial counsel was ineffective in that counsel was not
successful in challenging Brown's assertion of his Fifth Amendment right not to provide
incriminating evidence. Brown admitted selling drugs and he admitted that he was on parole at
the time he was selling drugs (R.  Jan. 20, 1998 at 275-275). However, when asked from whom
he obtained the drugs Brown asserted his Fifth Amendment right not to answer (Id. at 275).
Burnett does not articulate what additional steps trial counsel could have taken to introduce this
information at trial. In addition, upon direct appeal, the Fourth Department determined that the
question for which Brown asserted his Fifth Amendment right, was a collateral matter. (Docket
No. 10, Exhibits at 232). This state court decision is not contrary to clearly established federal
law or an unreasonable determination of the facts in light of the evidence presented.

Emma Glenn, suggesting that Brown had recanted his identification of Burnett as the shooter. (R. Jan. 23, 1998 at 39 and 43 respectively).  Trial counsel was also able to illicit testimony from Brown upon cross-examination to the effect that Brown had a significant criminal record and was involved in drug trafficking, larceny and various other criminal activities. (R. Jan. 20, 1998 at 257-267).  Thus, it is unclear as to whether Starks could have provided information that was not already before the jury.  Finally, the record reflects that trial counsel was attempting to locate additional witnesses on behalf of the defense at least two weeks prior to the trial in this case.[7] (R. Jan. 7, 1998 at 63).  Counsel's failure to locate or call Starks as a witness does not render counsel's performance as being below objectively reasonable professional standards. Nor has petitioner demonstrated that the result in this case would have been different had Starks been called as a witness.

The petitioner also argues that his wife would have contested the claim by police that she consented to their entry of the Burnett's apartment on September 5, 1997.  The issue regarding whether the police had consent to arrest Burnett was addressed at a suppression hearing on January 7, 1998.  Trial counsel cross-examined Officer Reinstein regarding the existence of consent to enter the home, but did not call any witnesses to refute Officer Reinstein's testimony that he had consent to enter the home.  (R. Jan. 7, 1998 at 39-40).  The record reflects that Burnett and trial counsel discussed the matter, and determined to rest without calling defense

---

[7]     Burnett claims that his trial counsel was ineffective in part because counsel allegedly lied when he told the court that he had not been able to successfully locate some witnesses. Petitioner's claim that his counsel lied is unsubstantiated. In any event, the petitioner has failed to demonstrate that any purported misstatement in this regard by counsel impacted his defense in any meaning way.

witnesses at the hearing. (R., Jan. 7, 1998 at 50).  In any event, even if Officer Reinstein's entry

to arrest Burnett in his home was illegal, that does not render Burnett's subsequent police-station

admission to Officer Reinstein inadmissible.  The Supreme Court dealt with this issue squarely in

New York v. Harris,  495 U.S. 14, 18 (1990).  In Harris, the Court determined that because the

police had probable cause to arrest Harris, the illegal entry into his home to effectuate the arrest

did not warrant the suppression of a subsequent post-Miranda statement he made to police

officers at the police station. The Supreme Court analyzed the pertinent Fourth Amendment

precedent and concluded:

> Nothing in the reasoning of [the relevant case law] suggests that an
> arrest in a home without a warrant but with probable cause
> somehow renders unlawful continued custody of the suspect once
> he is removed from the house. There could be no valid claim here
> that Harris was immune from prosecution because his person was
> the fruit of an illegal arrest. United States v. Crews, 445 U.S. 463,
> 474, 100 S.Ct. 1244, 1251, 63 L.Ed.2d 537 (1980). Nor is there any
> claim that the warrantless arrest required the police to release
> Harris or that Harris could not be immediately rearrested if
> momentarily released. Because the officers had probable cause to
> arrest Harris for a crime, Harris was not unlawfully in custody
> when he was removed to the station house, given Miranda
> warnings, and allowed to talk. For Fourth Amendment purposes,
> the legal issue is the same as it would be had the police arrested
> Harris on his doorstep, illegally entered his home to search for
> evidence, and later interrogated Harris at the station house.
> Similarly, if the police had made a warrantless entry into Harris'
> home, not found him there, but arrested him on the street when he
> returned, a later statement made by him after proper warnings
> would no doubt be admissible.

Harris, 495 U.S. at 18.

Here, even if Burnett's wife had testified that she did not give Reinstein consent to enter

the house when Burnett was arrested, the Supreme Court holding in Harris would not require the

suppression of Burnett's subsequent post-<u>Miranda</u> statement made at the police station. Burnett does not challenge the fact that probable cause existed at the time of his arrest inasmuch as Brown had identified Burnett as the shooter the day before.  (Docket No. 10, Exhibits  at 46). Thus, Burnett has not demonstrated that any failure on the part of trial counsel to raise this issue would have created a reasonable probability of a different result in this case.

Burnett also suggests that the witnesses who identified him as the shooter were not credible and that trial counsel was insufficiently prepared to demonstrate their lack of credibility. Both Brown and Kennedy identified Burnett as the shooter. The record reflects that petitioner's counsel adequately cross - examined these witnesses.  Issues of credibility are to be determined by the jury.  The record reflects that the jury had sufficient information which, if believed, would support the petitioner's guilt. Federal habeas courts are not free to reassess fact - specific credibility judgements by juries or to weigh conflicting testimony. See <u>Gruttola v Hammock,</u> 639 F.2d 922, 927 (2nd Cir. 1981); <u>McMillian v McClellan</u>, 1992 WL 96330, *4 (S.D.N.Y. 1992)(a habeas court may not second guess a jury's credibility determination). Rather, on collateral review, the court must presume that the jury resolved any questions of credibility in favor of the prosecution. See <u>Jackson v. Virginia</u>, 443 U.S. 307, 326 (1979); <u>Vera v. Hanslmair</u>, 928 F.Supp. 278, 284 (S.D.N.Y. 1996); <u>Fagon v. Bara</u>, 717 F.Supp. 976, 979 (E.D.N.Y. 1989) (habeas court "is not free to make credibility judgements about the testimony presented at Petitioner's trial or to weigh conflicting testimony").

As noted above, the evidence introduced at trial overwhelmingly supports the finding that Burnett was the individual who shot Homer Brown. Joseph Kennedy testified that he had dated Burnett's sister and that he was familiar with Burnett (Tr, Jan. 20, 1998 at 335-36). Kennedy

testified that he had never had any difficulties with the Burnett (id. at 338). According to

Kennedy, on August 31, 1997 Kennedy was going to the store and was on Parcells Avenue, near

Stout Street, when he saw Burnett (id. at 338-339). Kennedy testified that he and the petitioner

had a conversation at that time and that Burnett told Kennedy to tell Brown that Burnett was

looking for him (id. at 339). Kennedy went to Brown's home and gave him the Burnett's

message (id. at 341). Kennedy left Brown's home and walked down the street. At this time

Kennedy was not aware that Brown was walking behind him (id. at 342). Kennedy testified, he

and Brown came upon Burnett and that he observed Burnett shoot Brown at that time (id. at 343).

Homer Brown testified that Burnett lived down the street from him, and that he had

known Burnett for approximately one year.[8] According to Brown, the day before the incident, he

and Burnett had spent time together at Brown's home (id. at 237, 242-245). Brown gave an in-

court identification of Burnett (id. at 238). Brown testified that, on the day in question, he was

walking toward the corner of Parcells and Stout when he met Burnett and the two men had a

conversation (id. at 242-246). According to Brown, after their talk Burnett opened his coat,

pulled out a rifle and shot him (id. at 247-248).

Officer Ronald Reinstein of the Rochester Police Department testified that on September

5, 1997, he was involved in the investigation concerning the shooting of Homer Brown. (R. Jan.

23, 1998 at 5-6). Officer Reinstein testified that on September 5, 1997, he arrested Burnett in

relation to this case. The officer made an in-court identification of the petitioner (id. at 6). Officer

Reinstein told the jury that Burnett was given his Miranda  warnings and that initially he denied

---

[8]  Burnett admits that he and Brown were familiar enough with each other to be able to
recognize each other (Docket No. 1 at 21).

shooting Brown (id. at 11, 15). According to Officer Reinstein, Burnett subsequently told him that Brown had taken $850.00 from petitioner's home. Burnett told the officer that he confronted Brown on the street and that Brown pulled out a gun. The Petitioner then stated that he (the petitioner), "did what he had to do" (id. at 16) Officer Reinstein interpreted this statement to mean that Burnett shot Brown.

In sum, the overwhelming evidence in the record supports the jury finding that Burnett shot Brown. The record also contradicts petitioner's conclusory and self-serving allegations that trial counsel failed to investigate the facts underlying the charges against the petitioner in this case.  Counsel's failure to locate one witness who may have been able to provide testimony similar to that provided by other defense witnesses does not render counsel's representation "unreasonable."

At best, petitioner's assertions are conclusory and speculative.  Thus, the record in this case does not support the petitioner's claim that he received inadequate assistance of counsel because trial counsel's investigation into this case was deficient. See Vasquez v. United States, 1997 WL 148812 at *2 (S.D.N.Y.  1997) ("[P]etitioner's allegations with regard to alleged counsel errors in pre-trial preparation and investigation and trial advocacy are 'vague, conclusory, and unsupported by citation to the record, any affidavit, or any other source,' and, accordingly, ... '[t]he vague and unsubstantiated nature of the claims' defeated petitioner's claim of ineffective assistance of counsel....").

Thus, the record in this case does not support for the petitioner's claim that he received inadequate assistance of counsel because trial counsel's investigation into this case or pretrial preparation was deficient.

<u>Impeachment of Reinstein</u>

Burnett claims that he had ineffective assistance of counsel because his attorney failed to move to preclude Officer Reinstein's testimony or adequately impeach Officer Reinstein. As discussed above, Burnett has failed to articulate a basis to have precluded Officer Reinstein's testimony in light of the Supreme Court's ruling in <u>Harris</u>.  The petitioner also fails to provide any specific appropriate basis for impeachment that was not pursued by trial counsel.  The record shows that the Petitioner's attorney thoroughly cross-examined Officer Reinstein (R. Jan. 23, 1998  at 20). Counsel challenged the accuracy of the officer's written report (id. at 26). Counsel elicited information from the officer concerning Brown's criminal involvements (<u>id.</u> at 29). Counsel used Reinstein's own written reports for cross-examination (<u>id.</u> at 30). Finally, defense counsel forced Reinstein to admit that he had no independent recollection regarding certain matters (<u>id.</u> at 30). The record reflects that counsel's  cross-examination of Officer Reinstein  was adequate.  Burnett argues that trial counsel should have called petitioner's wife to challenge Officer Reinstein's assertion of that he had consent to enter the apartment to effectuate the arrest. However, Officer Reinstein's trial testimony did not address how he gained entry into the apartment to effectuate the arrest.  The determination of the Fourth Amendment issues revolving around Burnett's arrest were legal issues to be addressed by the Court, not by the jury.  Again, as discussed above, pursuant to the prevailing authority, even if consent was not provided to justify Officer Reinstein's entry into the apartment, that would not have invalidated Burnett's subsequent post-<u>Miranda</u> statement.  Thus, Burnett's wife's testimony in this regard was not relevant to the issues to be presented to the jury.  Burnett also suggests that trial counsel should have called Starks to further "impeach" Officer Reinstein's testimony.  Again, the testimony

14

which Starks would purportedly have been able to provide was that Brown had made statements to Starks recanting Brown's identification of Burnett as the shooter.  This does not constitute the impeachment of Officer Reinstein's testimony as to the statements made by Burnett to Officer Reinstein.

Burnett has failed to establish that trial counsel's cross-examination of Officer Reinstein was below objectively reasonable standards, or that calling Cynthia Burnett or Starks would have created the reasonable probability of a different result in this case.

### Bock and Glenn Testimony

Burnett asserts that trial counsel was ineffective because he failed to request a mistrial after Emma Glenn, a defense witness, referred to the fact that Burnett was on parole in her testimony.  Two of the witnesses called by the defense, Michael Bock and Glenn, provided testimony from which the jury would be able to infer that Burnett was on parole at the time of the events underlying the trial.  Bock was Burnett's parole officer. Brown visited Bock and advised Bock that he had wrongly identified Burnett as the shooter.  Bock was called to provide the jury with testimony to the effect that one of the key prosecution witnesses, Brown, had recanted his identification of Burnett as being the person who shot him. Although Bock testified that he was a parole officer, he did not state that he was Burnett's parole officer either on direct or cross-examination. The jury may have been able to infer this fact from Bock's testimony inasmuch as it would explain why Brown would have approached Bock (Bock's testimony makes it clear that he was not Brown's parole officer)(R. Jan. 23, 1998 at 39-43).  Glenn was also called to provide similar testimony. Glenn testified that Brown told her that he felt badly that he had identified the

wrong person as the shooter.  (R. Jan. 23, 1998 at 45).  In her testimony, Glenn stated that her

daughter told Brown to tell Burnett's parole officer of the mistake. (R. Jan. 23, 1998 at 46).  The

Court notes that no other mention of Burnett's parole status was made and that the issue was not

explored by the prosecution on cross-examination of Glenn.  The fact that Glenn made an

isolated reference to Burnett's parole status was not so obvious and prejudicial as to require a

mistrial.  Moreover, the fact that the witness made a statement undesired by counsel does not

mean that trial counsel failed to properly prepare the witness for her testimony.  The decision to

call Bock and Glenn represents an obvious trial strategy, to provide doubt as to the veracity of

Brown's testimony identifying Burnett as the shooter.  The testimony of Bock and Glenn in this

regard, is consistent with Burnett's trial testimony that he did not make a statement to Officer

Reinstein admitting that he shot Brown.  The obvious defense theory was that Brown

misidentified Burnett as the shooter; that Kennedy's testimony was incredible because he had a

relationship with Brown via Brown's sister.  If the jury were to believe the testimony of Bock

and Glenn, and if the jury credited Burnett's testimony that he did not make an admission to

Officer Reinstein, then the defense would have successfully have created doubt as to whether

Burnett was the person who shot Brown.  This represents a reasonable trial strategy even though

it did not prove to be successful. It is well-settled in the Second Circuit that the court on habeas

review should not "second-guess matters of trial strategy simply because the chosen strategy was

not successful." Cuevas v. Henderson, 801 F.2d 586, 590 (2d Cir.1986) (quoting Trapnell v.

United States, 725 F.2d 149, 155 (2d Cir.1983)), cert. denied, 480 U.S. 908 (1987); see United

States v. Aguirre, 912 F.2d 555, 560 (2d Cir.1990); United States v. Nersesian, 824 F.2d 1294,

1321 (2d Cir.), cert. denied, 484 U.S. 957 (1987); Ireland v. People of State of N.Y.,  1994 WL

649157, *4 (S.D.N.Y.,1994).

The petitioner contends that Glenn's testimony undermined the advantage the defense had

obtained as a result of the trial court's ruling pursuant to People v. Sandoval, 34 N.Y.2d 371

(1974). Here, the trial court had ruled that the prosecution could not inquire into or use Burnett's

1986 conviction against him during cross-examination even if he chose to testify at trial.  (R.

Jan. 20, 1998 at 17).  At the Sandoval hearing, trial counsel raised the fact that he may be asking

questions of Brown regarding his conversations with Bock, Burnett's parole officer.  Trial

counsel sought an advance ruling as to whether inquiring about such a conversation between

Brown and Bock would open the door to the prosecution revealing Burnett's parole status.  (R.

Jan. 20, 1998 at 19).  The Court stated that generally the fact that Burnett was on parole would

not be relevant or admissible but that he could not make any advance rulings on whether the

defense would open the door by its line of questioning. In any event, the Sandoval ruling

precluded the prosecution from introducing evidence of Burnett's prior conviction, but it did not

preclude Burnett from introducing evidence that referred to his parole status.  The fact that the

implementation of that trial strategy inadvertently revealed Burnett's parole status did not render

the trial strategy unreasonable, nor did it constitute ineffective assistance of trial counsel.


### Failure to Object to Jury Pool

Petitioner also claims ineffective assistance of counsel based upon the allegation that his

counsel failed to object to the composition of the jury pool. Burnett argues that there was only

one potential African-American juror and that she was not selected for the jury.  Burnett does not

allege or provide any basis to conclude that the juror was dismissed due to her race in violation

of <u>Batson v. Kentucky</u> 476 U.S. 79 (1986).  However, Burnett appears to argue that he was

entitled to a jury that included, at least to some degree, members who are African American.

Although a potential juror may not be excluded on the basis of his or her race, it is well-settled

that "a defendant has no right to a petit jury composed in whole or in part of persons of his own

race." <u>Batson</u>, 476 U.S. at 85.

The record does not support the petitioner's contention that trial counsel was ineffective

for failing to object to the jury pool.

<u>Prosecutorial Misconduct</u>

The petitioner asserts that trial counsel was ineffective in failing to object to

instances of prosecutorial misconduct when, upon cross-examination, the Assistant District

Attorney requested that the petitioner characterize other witnesses as lying.  To prevail on a claim

of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper

remarks caused him "substantial prejudice."  <u>United States v. Bautista,</u> 23 F.3d 726, 732 (2d

Cir.1994).  See also <u>United States v. Young</u>, 470 U.S. 1, 11-12  (1985) ("Inappropriate

prosecutorial comments, standing alone, would not justify a reviewing court to reverse a criminal

conviction obtained in an otherwise fair proceeding.").  The Second Circuit has held that

comments by a prosecutor to the effect that "a jury believing a defendant's testimony 'had to

conclude that other witnesses were lying.'" do not constitute prosecutorial misconduct. <u>United

States v. Martinez</u>,  201 F.3d 433  (2d Cir. 1999) citing <u>United States v. Shareef</u>, 190 F.3d 71, 79

(2d Cir.1999).  The petitioner has failed to demonstrate that the prosecutor's questions caused

him substantial prejudice.

Cummulative Effect of Issues

Considered independently or cumulatively, the petitioner's allegations are insufficient to sustain a claim of ineffective assistance at trial.

Based upon the record in this case, the state court determination that Burnett was not denied effective assistance of trial counsel was not contrary to established federal law or an unreasonable application of the facts. The petitioner's request for habeas corpus relief on this ground is denied.


Ineffective Assistance of Appellate Counsel

The petitioner also claims that he received ineffective assistance of appellate counsel.

A claim of ineffective assistance of appellate counsel is reviewed using the same Strickland standard as is used in a claim of ineffective assistance of trial counsel. In addition, an appellate attorney need not raise every non-frivolous legal argument on appeal which the trial record supports. See Evitts v. Lucey, 469 U.S. 387 (1985); Jones v. Barnes, 463 U.S. 745 (1983). "When a convicted defendant complains of ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness". Strickland, 466 U.S. at 687-688. "Judicial scrutiny of counsel's performance must be highly differential. Because of the difficulties in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance..." (id. at 689).

Burnett asserts that appellate counsel was ineffective primarily in failing to adequately

raise the issue that he was denied effective assistance of trial counsel.  In support of this

contention, the petitioner reasserts many of the allegations advanced in support of his direct

claim of ineffective assistance by trial counsel.  Because the Court finds that these claims do not

support a finding of ineffective assistance of trial counsel, appellate counsel's failure to raise

these issues cannot form the basis of an ineffective appellate counsel claim.[9]  The petitioner also

claims that appellate counsel failed to argue that trial counsel was ineffective for failing to

adequately cross-examine Kennedy with respect to Kennedy's knowledge of Brown's activity in

selling cocaine.  However, the record reflects that trial counsel did ask Kennedy about whether

Brown sold cocaine and if Kennedy knew where Brown would get cocaine from. (R. Jan. 20

1998 at 361).

Burnett further argues that appellate counsel failed to fully or "properly" develop the

arguments actually raised on appeal unrelated to the ineffective assistance of counsel claim and

characterizes appellate counsel's brief as "sketchy" and unsupported by legal authority.  The

record reflects that Petitioner's appellate counsel wrote a twenty-six page brief, raising seven

grounds for appeal (Docket No. 10, Exhibits at 5). The appellate brief cited 24 cases, three

statutes and one treatise on evidence. (Docket No. 10, Exhibits at 10).  The record reflects that

the issues raised by Petitioner's appellate counsel were significant and fully explored.  The

arguments raised by appellate counsel failed on the merits and not because of any inadequacy of

articulation.

---

[9]     Similarly, the petitioner's arguments that trial counsel was ineffective for failing to
preserve some of these claims for appeal also must fail.  Inasmuch as these claims lack merit, any
failure to preserve them for appeal did not prejudice the petitioner.

**Due Process Violation**

The petitioner claims that his due process rights were violated because the trial court's

Sandoval ruling purportedly precluded him from taking the stand and explaining to the jury the

context of the conversation which he had with Officer Reinstein.  The Sandoval ruling did not

close the door to the possibility of allowing the prosecution to introduce evidence of petitioner's

parole status depending on whether the petitioner "opened the door" with respect to that issue.  In

any event, as the record demonstrates (R. Jan. 23, 1998 at 53 - 54) the Petitioner did testify on his

own behalf and provided what appears to be a full account of the context of his conversation with

Officer Reinstein. Burnett has not articulated what specific testimony he would have added to his

testimony but for the Sandoval ruling.  Inasmuch as the petitioner's testimony was not impaired

in any way by the Sandoval ruling, the Petitioner's due process claim is without merit.

Based upon the record in this case, the petitioner was not denied effective assistance of

appellate counsel.  The petitioner's request for habeas corpus relief on this ground is denied.

**CONCLUSION**

Based on the above, the petition for habeas corpus relief (Docket No.1) is **DENIED** in its

entirety.

**Certificate of Appealability**

The Court also finds that no certificate of appealability should issue inasmuch as the

petitioner has not made a substantial showing of the denial of a constitutional right. *See,* 28

U.S.C. § 2253(c)(2) (Providing, in relevant part, that "[a] certificate of appealability may issue ... only if the applicant has made a substantial showing of the denial of a constitutional right."); *see also,* Miller-El v. Cockrell*,* 123 S.Ct. 1029, 1039-1042 (2003) ("Under the controlling standard, a petitioner must show that reasonable jurists could debate whether (or for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (citation and internal quotation marks omitted).

So ordered.

s/ Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
September 28, 2005